UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO. 3:21-CR-00007-RGJ |
| JOSEPH SAMIR ZAKHARI | DEFENDANT |

### DEFENDANT ZAKHARI'S RESPONSE TO GOVERNMENT'S APPEAL OF RELEASE ORDER

The government has filed new charges against defendant Joseph Zakhari, and has asked again that Mr. Zakhari be held in jail until the trial (or trials) can be had. After hearing testimony on the subject, the Magistrate Judge ruled that Mr. Zakhari should be released on the same conditions of home incarceration that have prevailed since Mr. Zakhari was first charged in November 2019. (Order, R. 2-2, Page ID # 18-19.) The government has appealed (R. 2, Page ID # 2-16), and for the reasons explained below, the Court should reject the prosecution's objections and affirm the Magistrate Judge's order.

### BACKGROUND

For two days starting on October 6, 2019, Mr. Zakhari corresponded via text message with some fifty women who

described themselves in dating-site profiles as adult females in the Louisville area interested in meeting men. One of these women was "Dana," whose MeetMe profile gave her age as 18; another was "Alyssa," who was 35 years old (a fact revealed by digital evidence in discovery). These two "women" turned out to be Detectives Matt Hedden and Mark Bramer, respectively, undercover officers in a local task force.

The profiles for both of the "undercover personae" displayed pictures of adult women; neither represented herself in her profile as a teenager. The profile photo of "Alyssa," for instance, was of a woman plainly past her youth. (*See* Sealed Exhibit 1, filed separately.) (Detective Bramer could not remember precisely the age of the woman who posed for this profile picture, but estimated that she was about thirty.) This "Alyssa" was so obviously not a teenager that Mr. Zakhari reacted with pointed sarcasm when she claimed she was "14f" (a fourteen year old girl): "14???" he writes. "[You] [l]ook 14. Send me a picture." "Alyssa" did, supplying the first of several photos of an indisputably grown-up female. (*See* Sealed Exhibit 2.)

Mr. Zakhari's communications with "Dana" (called "boredcrbgirl" on the Kik texting platform) led to a two-count indictment in November 2019. (Case No. 3:19-CR-00208-RGJ, Indictment, R. 9, Page ID # 22-26.) The government alleged that Mr. Zakhari had attempted to entice a minor and had tried to send

her an obscene image (a "dick pic," in common parlance). The Court did not order Mr. Zakhari held in jail pending trial on these charges, allowing him instead to live with his parents under conditions of home incarceration. (*Id.*, Order Setting Conditions of Release, R. 8 pg. 4 ¶ 7(p), Page ID # 16.) In early June 2020, the Court denied a government appeal seeking to revoke Mr. Zakhari's release, and instead modestly increased the scope of Mr. Zakhari's home confinement by allowing him to enter his back yard, if so permitted by his probation officer. (*Id.*, Order, R. 47 pp. 10-11, Page ID # 350-351.)

Very soon after that decision, the prosecution obtained a superseding indictment. (Case No. 3:19-cr-00208-RGJ, R. 50, Page ID # 365-370.) On June 17, 2020, relying on the same series of text messages that generated the first indictment, the government added a new charge characterizing Mr. Zakhari's communications as an attempt to produce child pornography. (*Id.* at Page ID # 366, 368.)

The government by this time (if not much sooner) had realized that Mr. Zakhari's phone also contained text messages involving Detective Bramer's "Alyssa" persona. On June 20, 2020, the prosecutor informed defense counsel that she had "additional discovery from your client's phone." (Case No. 3:19-cr-00208-RGJ, Zakhari Mot. to Compel Disclosure of "Alyssa" Data, R. 83 pg. 2, Page ID # 728, *and* Correspondence, R. 83-1 pg. 1, Page ID # 732.)

"Of note," the prosecutor specified, "your client was chatting with another law enforcement officer involved in the online undercover operation." (*Id.*) The government found at least a partial transcript of the "Alyssa" communications on Mr. Zakhari's phone; these text messages included several sexual references, a claim by "Alyssa" that she was fourteen, and a comment – "Take an uber" – to which the prosecution gives particular emphasis in its appeal. (U.S. Appeal of Release Order, R. 2 pg. 10, Page ID # 11.)

    Revealingly, the discovery of this "Alyssa" evidence did not prompt the government to seek Mr. Zakhari's immediate incarceration. In fact, the evidence seemingly inspired the government to do nothing much at all. The prosecutor told the Magistrate Judge in the recent detention hearing that the investigators would not have tried to learn more about the "Alyssa" communications if defense counsel had not been so persistent in their demands for additional discovery. (This is clear, in retrospect, from the prosecutor's correspondence about the subject – as late as November 4, 2020, the government expressly declared that the data recovered from Mr. Zakhari's phone "is the entirety of information we have." (Case No. 3:19-cr-00208-RGJ, Correspondence, R. 83-1 pg. 5, Page ID # 736.)) The plain implication of this is that there would be no new indictment, and no renewed demand for Mr. Zakhari's incarceration, if defense counsel had just left things well enough alone. Put differently, the

government's current urgency about jailing Mr. Zakhari is not the product of some new fear that Mr. Zakhari has become more dangerous than the government previously realized; the government has possessed this evidence (or it was reasonably available) for at least eight months now.

## ARGUMENT

The Court's task in all cases is to find "the least restrictive … combination of conditions" that will "reasonably assure the appearance of the [defendant] as required and the safety of … the community…." 18 U.S.C. § 3142(c)(1)(B); *United States v. Vasilakos*, 508 F.3d 401, 411 (6th Cir. 2007). "The default position of the law … is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The burden is on the government to prove that a defendant should be incarcerated, either by establishing by a preponderance of the evidence that the defendant presents a flight risk, or by showing with clear and convincing proof that the defendant is a danger to the community. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Within those bounds, the judicial officer is to "consider four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community." *Vasilakos*, 508 F.3d at 410-411 (citing 18 U.S.C. § 3142(g)(1)-(4)).

The government has conceded that there is no meaningful risk that Mr. Zakhari will fail to appear in Court as required. (U.S. Appeal, R. 2 pp. 7, 9, Page ID # 8, 10.) This is an appropriate judgment; although Mr. Zakhari was briefly in his front yard on one instance last October (*see id.* at 14, Page ID # 15), it was not an overture toward running away, and his probation officer in Maryland did not believe that the violation merited more than a warning. Moreover, the government accurately notes that GPS monitoring tools can be depended upon to alert the authorities and track Mr. Zakhari's physical location if he ever strays outside the allowed perimeter. (*See id.* at pg. 12, Page ID # 13.)

The question for the Court therefore resolves to deciding whether the government has demonstrated clearly and convincingly that Mr. Zakhari poses a danger to children that cannot be allayed by any set of release conditions. The Court, of course, has previously rejected this claim, and Mr. Zakhari's conduct while waiting for trial has justified the Court's view that home incarceration is sufficient to protect the community. There is absolutely no proof, for instance, that Mr. Zakhari has had unlawful or secret contact with any child, by internet or phone or any other means, while on home incarceration; there is no evidence whatsoever that he will "sexually prey on minor victims" unless kept in jail. (*Cf.* U.S. Appeal, R. 2 pg. 12, Page ID # 13.)

The government puts much stress on the fact that Mr. Zakhari is charged "with three crimes against a different minor," and that a charge of attempted production of child pornography has been added to the earlier indictment. (U.S. Appeal, R. 2 pg. 13, Page ID # 14.) The government does not explain, though, how the multiplication of charges makes Mr. Zakhari so much more dangerous to children that conditions of home incarceration can no longer control the risk. After all, if it were so, the government would have appealed Mr. Zakhari's release the instant the "Alyssa" communications were found, not wait many months until the communications were reduced to formal criminal charges.

In ordinary practice, the stacking of new charges sometimes warrants the view that a defendant now poses a greater risk of *flight*, at least if the additional charges threaten a greater penalty than before. *See, e.g., United States v. Gosy*, No. 16-CR-46G, 2018 U.S. Dist. LEXIS 2654, at *3 (W.D.N.Y. Jan. 5, 2018); *United States v. Barker*, No. 02-40157-01-JAR, 2004 WL 123270, 2004 U.S. Dist. LEXIS 768, at *9 (D. Kan. Jan. 9, 2004). However, the government has conceded that Mr. Zakhari does *not* present a risk of flight, notwithstanding the new charges. Indeed, though a full discussion is beyond the scope of the current pleading, it is probable that the new charges will not meaningfully increase Mr. Zakhari's overall potential punishment, by virtue of Sentencing Guidelines rules governing relevant conduct and mandating concurrent terms in

related prosecutions. *See* U.S.S.G. §§ 1B1.3(a)(2)-(3), 3D1.2(b). The new charges, in short, do not create a new incentive for Mr. Zakhari to run away or harm anyone in the community.

Mr. Zakhari's presence in his parents' side yard and front yard was a breach of his release conditions, and must not be minimized. A consideration of the circumstances surrounding the violation, though, can relieve any concerns that Mr. Zakhari's conduct has more ominous implications. The underlying problem was a loss of GPS transmissions, which occurred when Mr. Zakhari's father, wanting to protect contractors installing a new gutter, turned off the house's electricity. Mr. Zakhari's presence in the yard was in response to his father's request for help pulling down ivy that obstructed an area that the contractors needed to access. He was removing branches of ivy when the probation officer, coming to the scene to check on the GPS equipment, found him. When his father asked him for help, Mr. Zakhari should have said "no"; even so, he was not in the yard for enjoyment's sake, and during the brief period he was pulling down ivy, he posed no danger to neighbors or people on the street. The violation, though worthy of attention, is not grounds to put Mr. Zakhari in jail.

## CONCLUSION

Mr. Zakhari has committed no crimes since coming under the Court's jurisdiction in November 2019. Save only the present charges, he has never done anything to warrant the attention of

law enforcement. Probation officers in Louisville and Maryland have reviewed Mr. Zakhari's conduct while in home incarceration, and these experienced professionals have concluded that Mr. Zakhari can safely be allowed to remain at home under his existing conditions. The defense asks the Court to reject the government's appeal and affirm the Magistrate Judge's order of release.

                                            Respectfully submitted,

                                            *Michael R. Mazzoli*

                                            Scott C. Cox
                                            Michael R. Mazzoli
                                            Attorneys for Defendant Zakhari
                                            COX & MAZZOLI PLLC
                                            600 West Main Street, Suite 300
                                            Louisville, Kentucky 40202
                                            502-589-6190
                                            MazzoliCMLaw@aol.com

## CERTIFICATE OF SERVICE

On February 19, 2021, I electronically filed this document through the ECF system, which will send a notice of electronic filing to counsel of record.

                                            *Michael R. Mazzoli*
                                            Scott C. Cox
                                            Michael R. Mazzoli